IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JACKI PICK, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:24-CV-01607-ELR |
| | * | |
| BRADFORD JAY RAFFENSPERGER, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

_____

**ORDER**

_____

Presently before the Court is Plaintiff's Motion to Transfer Venue [Doc. 10] and Defendant's Motion to Dismiss Amended Complaint [Doc. 25]. The Court heard oral argument on the motions on November 21, 2024. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

Plaintiff brings this action against Defendant over alleged defamatory statements made in the book, *Integrity Counts*, authored by Defendant.[1] The Court

---

[1] This diversity-based suit is against Defendant in his individual capacity, rather than one against him in his official capacity as Secretary of State for the State of Georgia. Am. Compl. ¶¶ 32–33 [Doc. 23].

first addresses the Motion to Transfer [Doc. 10] and then the Motion to Dismiss [Doc. 25].

I. **Motion to Transfer**

Plaintiff moves to transfer this action to the Gainesville Division of this Court, pursuant to Local Rule 3.1(B)(3). [Doc. 10-1]. Rule 3.1(B)(3) provides that "[a]ny civil action brought in this district on the grounds that the cause of action arose here must be filed in a division of the district where the activity occurred." Plaintiff argues that because she filed her Complaint [Doc. 1] in the Gainesville Division and alleged that "one or more of the books [at issue] were sold in this district and division" [Compl. ¶ 31], the Gainesville Division is the mandatory venue under the Local Rules and the Clerk's assignment of this action to the Atlanta Division was improper. [Doc. 10-1 at 2, 4]. She seeks to transfer this action to the Gainesville Division for further proceedings, arguing that it was properly filed in that division. [Id. at 5].

Local Rule 3.1 addresses divisional venue. Defendant contends that this action was properly assigned to the Atlanta Division in accordance with Rule 3.1(B)(1)(a). According to that Rule,

> [e]xcept as otherwise provided, any civil action, not of a local nature, against a defendant or defendants, all of whom reside in this district, must be brought in the division where the defendant or defendants reside. If the defendants live in different divisions, the action may be brought in any division in which one (1) defendant resides.

LR 3.1(B)(1)(a), NDGa. The sole Defendant in this action resides in Johns Creek, Georgia. Compl. ¶ 29; Am. Compl. ¶ 32. The city of Johns Creek is in Fulton County, which is a part of the Atlanta Division.[2] Neither the Complaint nor the Amended Complaint allege that this action is of a nature local to the Gainesville Division. Plaintiff, however, asserts that this action falls into Rule 3.1(B)(1)(a)'s unless "otherwise provided" exception. Specifically, Plaintiff maintains that, as alleged in the Complaint, the activity giving rise to her causes of action (i.e., sales of the book at issue) occurred in the Gainesville Division. [Doc. 10-1 at 2–4]. Although the Amended Complaint, referencing the assigned Atlanta Division, no longer includes a reference to book sales in this District, it alleges that a "substantial part of the events or omissions giving rise to [Plaintiff's] claim occurred" "in this district and division" and that *Integrity Counts* was "distributed . . . in . . . Georgia[.]" Am. Compl. ¶¶ 34, 75.

In view of Plaintiff's allegations, the books sales were not limited to the Gainesville Division. Nowhere does Plaintiff allege that the "activity" occurred exclusively in the Gainesville Division. Rather, both the Complaint and the

---

[2] The Court takes judicial notice of these geographical facts. "Under Federal Rule of Evidence 201, a court 'may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Kerruish v. Essex Holdings, Inc., 777 F. App'x 285, 293 (11th Cir. 2019) (quoting Fed. R. Evid. 201(b)(2)). Matters of geography are such fact.

Amended Complaint consistently maintain that Defendant "entered contracts to have his book, *Integrity Counts*, marketed and sold to Georgians through online booksellers and physical stores located in Georgia. He also promoted Integrity Counts through Georgia media outlets that broadcast in the Georgia market and nationally" and that Defendant, in fact, "sold the Book to further his political career and build his national brand[.]" Compl. ¶ 29; Am. Compl. ¶¶ 32, 122. Thus, under Rule 3.1(B)(3), venue would be proper in any one of this Court's divisions.

In the scenario where the "activity" giving rise to the cause of action occurred state-wide, Rule 3.1(B)(3) does not control over Rule 3.1(B)(1)(a).[3] This is unlike the case in Linao v. GCR Tire Ctrs., No. 1:09-CV-1798-MHS, 2009 U.S. Dist. LEXIS 141918, at *2 (N.D. Ga. Aug. 17, 2009), where the Court found Rule 3.1(B)(3) controlling. There, although the Defendant resided in the Atlanta Division, the Court transferred the action to the Gainesville Division because the activity giving rise to the cause of action (i.e., a tire explosion) occurred in Gainesville. Linao, 2009 U.S. Dist. LEXIS at *1. The claim in Linao, thus, stemmed from a discrete, exclusive occurrence in the Gainesville Division. Here, however, Plaintiffs

---

[3] "A district court may adopt local rules governing its practice, provided they are consistent with federal law and the federal rules of procedure, evidence, and bankruptcy." Zech v. Comm'r of Soc. Sec., 680 F. App'x 858, 860 (11th Cir. 2017) (citing Fed. R. Civ. P. 83(a)). Plaintiff concedes that Rule 3.1(b) "comports with federal law, it is a valid division venue rule in this case." [Doc. 10-1, 4]. And the Court is best placed to interpret its own rules. Zech, 680 F. App'x at 860 ("A district court is the best judge of its own rules.").

allegations indicate that the book sales are not exclusive to the Gainesville Division. Accordingly, the Court concludes that Rule 3.1(B)(1)(a), rather than Rule 3.1(B)(3), controls and that venue is appropriate in the Atlanta Division of this Court.

## II.     Motion to Dismiss

### A.     Background

On November 3, 2020—election day—State Farm Arena in Atlanta, Georgia, served as a site for ballot counting. Am. Compl. ¶ 3 [Doc. 23]. The ballot counting activity at State Farm Arena was recorded in an over 20-hour long Surveillance video ("Video"). Id. After the 2020 election, Plaintiff (a licensed but non-practicing attorney) volunteered to "assist with election related matters in Georgia" and, in that capacity, "helped organize and summarize investigative facts and affidavits" from individuals alleging "potential or actual irregularities, misconduct, or fraud in the administration" of the election. Id. ¶¶ 49, 165. Two of the affidavits Plaintiff assisted with were from individuals alleging irregularities in ballot processing at State Farm Arena. Id. ¶ 49.

On December 3, 2020, the Georgia State Senate Election Law Subcommittee held a hearing about the "alleged election irregularities, misconduct, or fraud in the 2020 election." Id. ¶ 56. Plaintiff attended the hearing and made a presentation using the Video. Id. ¶¶ 57–58. She did not show the Video in its entirety; rather, she "instructed the A/V tech multiple times to 'fast forward' or 'back up' to various

times on the single video file[.]" Id. ¶ 58. During her presentation, Plaintiff pointed to the ballot containers shown on the screen and said, "I'm going to call [the "containers for ballots"] a suitcase." Id. ¶ 61; Tr. of Dec. 3, 2020 Senate Judiciary Subcommittee Hr'g. ("Hr'g Tr.") at 31:9–11 [Doc. 25-6].[4, 5] Plaintiff, the only person

---

[4] Plaintiff did not attach to her pleading the transcript of the December 3, 2020 hearing, but Defendant included it in his motion to dismiss. The Court considers this transcript, and the sections from *Integrity Counts* that Defendant has filed, as incorporated by reference into Plaintiff's pleading because these documents are "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). A document central to a plaintiff's claim is one that is "a necessary party of [a plaintiff's] effort to make out a claim" rather than one merely "directly responsive to a factual allegation." Kalpakchian v. Bank of Am. Corp., 832 F. App'x 579, 583 (11th Cir. 2020) (first quote); Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007) (second quote). And a document is "undisputed," for purposes of incorporation by reference, if "the authenticity of the document is not challenged." Horsley, 304 F.3d at 1134. Both the December 3, 2020 hearing transcript (memorializing Plaintiff's presentation to the Senate Judiciary Subcommittee) and those sections of *Integrity Counts* that contain the allegedly defamatory statements are key to Plaintiff's efforts to make out a claim—the first (the hearing transcript) is the record of Plaintiff's statements and presentation; the second (the relevant portions of *Integrity Counts*) contain the statements that are allegedly rendered defamatory in view of Plaintiff's actual presentation on December 3, 2020. These documents are also undisputed. Although Plaintiff generally argues against the Court's consideration of the several exhibits attached to Defendant's motion to dismiss because they are "not properly authenticated, contain hearsay and hearsay within hearsay, and are in some instances incomplete" [Doc. 29 at 7], Plaintiff does not argue or suggest that the supplied transcript and excerpts of *Integrity Counts* are altered, that the *Integrity Count excerpts* are not those that Plaintiff challenges as defamatory, or that the transcript of the hearing is not the one that Plaintiff refers to in her pleadings. See Kalpakchian, 832 F. App'x at 583; Baker v. City of Madison, Ala., 67 F.4th 1268, 1277 (11th Cir. 2023). Thus, the Court considers these two documents in adjudicating the motion to dismiss. The Court does not rely on the other documents supplied by Defendant as they either fail to meet the criteria for incorporation by reference or are not necessary for the Court's analysis. While the Court has considered Plaintiff's objections to the exhibits associated with Defendant's motion to dismiss, it does not otherwise entertain Plaintiff's motion to strike the exhibits as it is improperly presented as a separate request for relief in Plaintiff's response to the motion to dismiss, rather than as a standalone motion.

[5] The Amended Complaint quotes Plaintiff as having said: "I am going to call these suitcases." The hearing transcript attributes the following to Plaintiff: "So, there you have the black—I'm going to call it a suitcase—containers for ballots." The Court refers to Plaintiff's statement in the

to present the Video at the hearing, focused her presentation "solely on questions and potential irregularities that anyone could observe from the [V]ideo, matched to the statements in witness affidavits," and she raised "legitimate questions of why the ballots under the table were separate from the others and not coming from the same place that ballots had come from throughout the day." Am. Compl. ¶¶ 71, 73, 104.

In *Integrity Counts*, Defendant referred to the segments of the Video that Plaintiff showed during her presentation at the December 3, 2020 hearing as (1) "GIULIANI's SLICED-AND-DICED VIDEO,"[6] (2) "deceptively sliced and edited so that it appeared to show the exact opposite of reality," (3) "a slice of video that removed the clear evidence that Fulton County election works had protected the ballots and the process as required by law," (4) "chopped up," and "sliced and diced." Am. Compl. ¶¶84–86. Defendant allegedly also testified that the Video was "doctored" or "false." Id. ¶ 96.[7] Plaintiff alleges that, through those statements,

---

hearing transcript because it further assists in identifying the item(s) Plaintiff refers to as "suitcase(s)."

[6] Although the Amended Complaint does not include Giuliani's name in conjunction with the "SLICED-AND-DICED VIDEO," *Integrity Counts* does. Compare Am. Compl. ¶ 84, with Doc. 25-1 at 139. Thus, for purposes of completeness and accuracy, the Court refers to the statement as included in the book at issue. See Hoefling v. City of Mia., 811 F.3d 1271, 1277 (11th Cir. 2016) ("[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

[7] *Integrity Counts* is the alleged defamatory publication at issue. Specifically, according to the Amended Complaint, "Jacki Pick sues Bradford Jay Raffensperger in his personal capacity for civil libel, defamation including defamation per se, libel, libel per quod, libel by innuendo in light of extrinsic facts, and false light, based on statements in his book, ironically titled 'Integrity

Defendant falsely accused Plaintiff of a crime under Georgia law—i.e., presenting misleading and false evidence to the Georgia legislature. Id. ¶ 96.

Defendant also recounts in his book that his office had to "punch down lies" or had to correct "outright lying" that the official boxes containing ballots were "suitcases" or "secret suitcases." Am. Compl. ¶ 87. He republished in the book a journalist's statement that "if you are someone who doesn't even believe the simple, basic fact (that has nothing to do with anything) that these are not suitcases - you live in a world outside of reason & reality." Doc. 25-1 at 145; Am. Compl. ¶ 88.[8] According to Plaintiff, through those statements, Defendant falsely accused her of "sensationalizing" by using the term "suitcase" when, in fact, poll workers and Defendant's own state election monitor use that term for "ballot transfer bags." Am. Compl. ¶ 176.

Plaintiff seeks to hold Defendant liable for defamation, specifically, defamation per se, libel, libel per quod, and libel by innuendo [Am. Compl., Count 1] and for false light [Am. Compl., Count 2]. Defendant counters that Plaintiff

---

Counts.'" Am. Compl., Preamble, Count 1 (asserting defamation and related claims based on "false statements in [Defendant's] November 2, 2021, [sic] Book claiming Pick presented deceptively edited Video to the Georgia legislature."). *Integrity Counts* does not use the terms "doctored" or "false" in conjunction with the Video, and the Court restricts its defamation analysis to the challenged terms in the book.

[8] Because the Amended Compliant paraphrases part of the quoted statement, the Court relies on the full statement as it appears in *Integrity Counts*.

cannot maintain her action for defamation- and libel-related torts because she does not and cannot plausibly allege key elements of those torts—i.e., that the statements at issue are of and concerning Plaintiff; that they are false; or that the statements were made with actual malice (Defendant's asserted requisite level of intent). [See generally Doc. 25]. Defendant also argues that the false light claim fails because Plaintiff did not assert it until two years after the statute of limitations had run and Georgia's renewal statute cannot resurrect it. Id. at 25.

B. **Legal Standard**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a 12(b)(6) motion to dismiss, the court must accept as true the allegations set forth in the complaint, drawing all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); United States v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555); Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007). Rather, "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief" to satisfy "the pleading

requirements of Rule 8." Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005) (citing Fed. R. Civ. P. 8(a)(2)).

Additionally, to survive a Rule 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Put differently, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This so-called "plausibility standard is not akin to a 'probability requirement;'" rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id.; Twombly, 550 U.S. at 556.

**C. Discussion**

At issue are the two Counts—defamation-related claims (Count 1) and false light claim (Count 2)—Plaintiff alleges in her complaint. The Court addresses the challenge to the two Counts in order.

1. Count 1

To successfully maintain a defamation claim under Georgia law, the plaintiff must plausibly allege "four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the

10

actionability of the statement irrespective of special harm."[9, 10] ACLU, Inc. v. Zeh, 864 S.E.2d 422, 427 (Ga. 2021). "Libel is a form of defamation." N. Atlanta Golf Operations, LLC v. Ward, 870 S.E.2d at 818 (Ga. Ct. App. 2022); Smith v. DiFrancesco, 802 S.E.2d 69, 72 (Ga. Ct. App. 2017) ("A written defamatory statement is actionable as either libel per se or libel per quod.").[11] The Court first addresses whether Plaintiff has plausibly alleged a defamation claim over Defendant's statements regarding "suitcase" and then whether Plaintiff has plausibly

---

[9] A distinction between defamation and defamation per se is that to be considered defamation per se, "[t]he words must either be spoken of the plaintiff in connection with his calling or they must be of such a nature such as to charge him with some defect of character or lack of knowledge, skill, or capacity as necessarily to affect his competency successfully to carry on his business, trade, or profession." Smith v. DiFrancesco, 802 S.E.2d 69, 72 (Ga. Ct. App. 2017) (cleaned up). Another distinction is that "[w]here a statement is defamatory per se, the element of damages is inferred." Id. (cleaned up).

[10] Although Plaintiff applies Georgia's law on defamation in her opposition to Plaintiff's Motion to Dismiss [Doc. 29 at 10–11], Plaintiff's counsel argued at the November 21, 2024 hearing that, in view of Project Veritas v. CNN, Inc., No. 22-11270, 2024 U.S. App. LEXIS 28349 (11th Cir. Nov. 7, 2024), Texas law should apply. In Project Veritas, the Eleventh Circuit did not undertake a choice of law analysis, but it noted that the district court had determined that "for purposes of a multistate defamation case, 'the place of the wrong' is the state or states where the plaintiff is domiciled and, thus, the substantive law of that state applied. Id. at *6 n.10. Here, Plaintiff is a citizen of Texas. And even assuming that Texas defamation law applies, that application does not alter the Court's analysis because the elements of defamation and related claims under Georgia law are substantially similar of the those under Texas law. For instance, under Texas law, "[d]efamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." In re Lipsky, 460 S.W.3d 579, 593 (Tex. 2015). Moreover, Plaintiff's counsel did not argue at the hearing that the outcome is determinative on the state law applied.

[11] Texas law similarly provides: "A written defamatory statement is libel per se if the words in and of themselves are so obviously hurtful to the person aggrieved by them that they require no proof of injury." Main v. Royall, 348 S.W.3d 381, 390 (Tex. App. 2011).

11

alleged a defamation claim over Defendant's statements regarding the Video excerpts.

### a. "Suitcase"

To maintain a defamation claim concerning Defendant's statements about ballot containers identified as "suitcases" or "secret suitcases," Plaintiff must plausibly allege that the statements were "concerning" her. That is, she must allege that the statements "refer to some ascertained or ascertainable person, and that person . . . is the plaintiff." Horsley v. Feldt, 304 F.3d 1125, 1136 (11th Cir. 2002); Cox Tex. Newspapers, L.P. v. Penick, 219 S.W.3d 425, 433 (Tex. App. 2007) (same). Plaintiff has failed to do so. Not only is Plaintiff not mentioned by name in *Integrity Counts*, Defendant's "suitcase" statements do not refer to her by "ascertainable implication." Id.

Plaintiff claims that Defendant falsely accused her of sensationalizing the events at State Farm Arena through her reference to ballot containers as "suitcases." Am. Compl. ¶ 12. According to Plaintiff, "'suitcase' is field jargon commonly used by Fulton County election workers to describe ballot containers." Id. As discussed here, this is how Plaintiff used the term during her December 3, 2020 presentation, and nothing in *Integrity Counts*'s discussion of "suitcase" suggests that the book was

referring to those individuals who use the term simply as "field jargon."[12] *Integrity Counts* does not place in it its crosshairs those individuals who informally refer to official, secure ballot containers as "suitcases"; rather, it accuses those using the term in such a way as to advance the view that ballots were maintained in unofficial, unsecured containers (e.g., literal suitcases). In republishing a journalist's statement that "if you are someone who doesn't believe the simple, basic fact . . . that these are not suitcases – you live in a world outside of reason & reality," Defendant makes clear that the journalist is referencing an image of a "secure case to hold ballots." [Doc. 25-1 at 145]. The thrust of the statement concerns those who believe that referenced ballot containers are literal suitcases as opposed to legitimate receptacles for ballots.

Similarly, Defendant's statements regarding the existence of "secret suitcases" being lies is concerning those individuals implying or asserting that those ballot containers were not official, secured ballot containers. Specifically, Defendant recounts one of his staff members explaining that "[w]hat you saw, the 'secret suitcase' [with Gabe's air quotes] with magic ballots, were actually ballots that had

---

[12] The Court has considered the alleged defamatory statements as they would be interpreted by a reasonable person. See Rubin v. U.S. News & World Rep. Inc., 271 F.3d 1305, 1308 (11th Cir. 2001) (considering the "reasonable reading" of the allegedly defamatory article); Main, 348 S.W.3d at 390 ("We construe an allegedly defamatory publication as a whole in light of the surrounding circumstances and based upon how a person of ordinary intelligence would perceive it.").

been packed into those absentee ballot carriers by the workers in plain view of the monitors and the press." [Doc. 25-1 at 147]. The reasonable read of this statement is not that it is sensationalism or a lie to call ballot containers "suitcases" but that it is a lie to say that there were "secret suitcases" packed, outside of the presence of monitors and the press, with ballots from outside of the normal chain of custody. Plaintiff, although she used the term "suitcase" during her presentation at the December 3, 2020 hearing and questioned why the ballots in the "four suitcases . . . underneath the table" were "separate from all the other ballots" and why they were counted "whenever the place is cleared out with no witnesses," she did not imply that the containers she referred to were literal suitcases or were something other than ballot containers used in the regular course of vote counting. Hrn'g Tr. at 18:14–15, 18:18–21. Rather, she explained to her audience that in using the term "suitcase" she was referring to the "containers for ballots" seen at State Farm Arena. Id. at 31:9–11; Am. Compl. ¶ 61. Thus, Plaintiff has not plausibly alleged that Defendant's "suitcase" statements were concerning her. In view of this failure to establish that necessary element, Plaintiff's various forms of defamation by libel and defamation per se claims premised on the "suitcase" statements fail.

      b.    *"SLICED-AND-DICED VIDEO," etc.*

A defamation claim fails as a matter of law in the absence of a false statement of fact. Turner v. Wells, 879 F.3d 1254, 1269 (11th Cir. 2018). In determining

falsity, "defamation law overlooks minor inaccuracies and concentrates upon substantial truth." Bryant v. Cox Enters., Inc., 311 Ga. App. 230, 234, 715 S.E.2d 458, 463 (2011); Digerati Distribution & Mktg., LLC v. Conradical Sàrl, No. 1:22-cv-1302-DH, 2024 U.S. Dist. LEXIS 49693, at *20 (W.D. Tex. Mar. 20, 2024) ("A showing by the defendant of substantial truth will defeat a plaintiff's defamation claim."). Because the Video-related statements Plaintiff challenges are substantially true or are nonactionable, hyperbolic speech, Plaintiff's defamation by libel claim and defamation per se claims premised on those statements fail.[13]

Plaintiff claims that Defendant falsely accused her of slicing and dicing the Video, of deceptively slicing and editing it, of presenting a slice of the Video that removed contrary evidence, and of chopping up and doctoring the Video. But her own allegations (and the transcript of the December 3, 2020 hearing presentation) establish that Plaintiff showed only select portions of the over 20-hour Video. Specifically, Plaintiff alleges that she fast forwarded and reversed "to various times on the single video file." Am. Compl. ¶ 56. During her presentation, Plaintiff plays select sections of the Video. See Hrn'g Tr. at 18:2–4, 19:10, 20:15–16, 20:24–25, 21:9–11, 23:1–2. Thus, it is true that Plaintiff showed only select portions of the

---

[13] For this reason, the Court does not additionally decide whether the statements were "concerning" Plaintiff.

Video. In view of that, it is not false to say that slices of the Video were presented or that portions of the Video were edited out or removed.

Moreover, the underlying gist of the descriptors such as "sliced and diced" and "chopped up" is that selective segments of the Video were shown. That underlying gist—the selective showing—is true. *Integrity Counts* takes aim at that selective showing, by figuratively or hyperbolically referring to the segments as "sliced and diced," "chopped up," etc. Such use is not actionable. <u>Horsley v. Rivera</u>, 292 F.3d 695, 703 (11th Cir. 2002) (concluding that "rhetorical hyperbole" is "protected by the First Amendment and by Georgia law"); <u>Coronado v. Freedom Commc'ns, Inc.</u>, No. 13-CV-00525, 2015 Tex. App. LEXIS 10128, at *6–7 (Tex. App. Sep. 30, 2015) ("Statements that would be perceived by the audience as 'rhetorical hyperbole' do not constitute defamation."). Contrary to Plaintiff's argument, Defendant does not accuse anyone of physically altering the Video's contents to present something different than what was recorded. Rather, considered in the context of the Chapter in which they are presented, the only reasonable reading of *Integrity Count*'s statements about the Video is that they accuse the individuals using the Video to support their position that fraudulent ballots were being counted of misleading their audience or of not showing reality by failing to show portions of the Video making the chain of custody for those ballots apparent. [<u>See</u> Doc. 25-1 at 139–40]. In doing so, Defendant uses hyperbolic speech or truthfully recounts that

the Video was "sliced" or "edited" to "remove" portions contradicting the fraudulent ballot claim.

In sum, because the accused statements are substantially true or are hyperbole, Plaintiff cannot maintain her claims in Count 1 premised on those statements.

2. Count 2

For the same reasons that Plaintiff's defamation by libel and defamation per se claims fail, so too do Plaintiff's false light claim. "It is black letter law that the plaintiff in a false light case must establish that the publicity was in fact false." Monge v. Madison Cty. Record, Inc., 802 F. Supp. 2d 1327, 1336 (N.D. Ga. 2011) (cleaned up).[14] As explained above, Defendant's statements concerning the Video were either substantially true or were hyperbole, to the extent Plaintiff asserts a false light claim based on Defendant's statements about the Video, that claim fails. Similarly, to the extent Plaintiff maintains that Defendant portrayed her in false light through his "suitcase" statements, this claim also fails. "To establish a claim of false light, a plaintiff must establish the existence of false publicity that depicts the plaintiff as something or someone which she is not." Ass'n Servs. v. Smith, 249 Ga. App. 629, 633, 549 S.E.2d 454, 459 (2001). Because Defendant's "suitcase"

---

[14] "Texas law does not recognize the tort of false light." Kelley v. KIMC Invs., Inc., No. 3:10-CV-2384-L, 2012 U.S. Dist. LEXIS 25244, at *19 (N.D. Tex. Feb. 28, 2012). Because the Parties briefed the claim under Georgia law, the Court also undertakes that analysis.

statements were not concerning Plaintiff, she cannot plausibly maintain a false light claim premised on those statements.

Alternatively, Plaintiff's false light claim is barred by the statute of limitations. "Georgia law is . . . clear that the statute of limitations for 'injuries to the reputation' must be filed within one year after the right of action accrues or it is time-barred," and false light claims fall within this one-year limitation. Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1153–54 (11th Cir. 2011) (citing O.C.G.A. § 9-3-33). Defendant argues that because Plaintiff did not assert the claim until over two years after *Integrity Counts* was published in November 2021, her claim is time barred. [Doc. 25 at 25]. Plaintiff does not dispute that she first asserted her false light claim over two years after *Integrity Counts* published. Rather, she contends that Federal Rule of Civil Procedure 15(c)'s relation back doctrine for amended pleadings safeguards her claim. Specifically, she argues that had her initial action, filed in a United States District Court in Texas, not been dismissed for lack of personal jurisdiction [Am. Compl. ¶ 35], she would have been properly able to amend that complaint to assert her false light claim under Rule 15(c).[15] Because, Plaintiff contends, this action is the same lawsuit "brought in the venue the Texas court said would be more appropriate," her newly asserted false light claim in this

---

[15] This assertion runs contrary to the fact that there is no false light cause of action under Texas law.

renewal action should relate back to the Texas filing, which was within one year of Plaintiff's discovery of the book's publication. [Doc. 29, 20]. Not only does Plaintiff not provide case law in support for this argument, it runs contrary to Georgia law's dictates on renewal actions. Under Georgia law, a party may not rely on relation back provisions to "add otherwise barred claims to renewal actions, when such claims are not substantially the same as the claims in the original action." Burns v. Dees, 557 S.E.2d 32, 39–40 (Ga. Ct. App. 2001).[16]

Accordingly, Plaintiff's false light case is subject to dismissal.

### III. Conclusion

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Transfer Venue [Doc. 10] and **GRANTS** Defendant's Motion to Dismiss Amended Complaint [Doc. 25] and **DISMISSES WITH PREJUDICE** the Complaint. As no further issues remain pending, the Clerk is **DIRECTED** to terminate this action.

**SO ORDERED**, this 22nd day of November, 2024.

_Eleanor L. Ross_
Eleanor L. Ross
United States District Judge
Northern District of Georgia

---

[16] "[F]ederal courts sitting in diversity . . . apply relation-back rules of state law where, as here, state law provides the statute of limitations for the action." Saxton v. ACF Indus., Inc., 254 F.3d 959, 963 (11th Cir. 2001).